## HARVEY *v.* CHASE.

No suit can be commenced and maintained against the stockholders of a corporation whose object is a dividend of profits among its stockholders, to recover of them any debt or civil liability of such corporation, until sixty days "after a legal demand of payment thereof shall have been made upon the company."

Such "legal demand" should be a request for the immediate payment of a debt or liability fully due and payable, made personally by the creditor or his authorized agent, holding and exhibiting or stating verbally and specifically the character and amount of such debt or liability, upon some officer or agent of the corporation shown by evidence, or by law and usage entitled and so presumed to hold the funds of the corporation for the purpose of adjusting and paying, and whose duty it is, according to law or the by-laws and course of business of the corporation, to liquidate and pay such debt or liability, at his office or other usual place of business, during business hours of the day of the demand; or upon some officer or agent of the corporation, whose duty it is to see that the debts of the corporation are duly paid, and that means are seasonably provided for and applied to that purpose, or that a meeting of the stockholders is called to provide such means.

DEBT against the defendant in the Court of Common Pleas for this county, as a stockholder in the Contoocook Valley Railroad, to recover of him the amount of a bond issued by said railroad in 1849.

To prove a demand on said railroad for the payment of said bond, the plaintiff introduced George E. Holbrook as

a witness, who testified that he was treasurer of said road from July, 1851, to March, 1852, and clerk and assistant treasurer afterwards. He testified as follows: Joseph B. Walker, I think, made a demand on me, as treasurer of the road, to pay certain bonds, in 1851–2. I cannot recollect the number; cannot identify the bonds; did not make any payment. They were of the issue of 1849.

In the cross examination he said: Walker said he had bonds to a certain amount, and wanted to know if I could pay them; think he showed me certain bonds; cannot say positively as I ever saw any bonds in Walker's hands; think I did; cannot say as any of the conversations were in the office; don't recollect as he made any demand; asked me when I could pay the bonds.

Joseph A. Gilmore testified as follows: I was superintendent of the road from the beginning, to November 6, 1857; think Walker came to the office several times, and wanted pay on the bonds; cannot say as he made any demand, but spoke to me several times; wanted his pay. This was before October 6, 1852.

In the cross examination he said: I was director from May, 1851, to July, 1852; think Walker was in my office when he spoke to me; think he showed the bonds and a written demand; cannot say positively; cannot say as he showed the bonds to me. He spoke to me several times about them; think the first time Walker spoke to me about the bonds was in my office, which was the same as the treasurer's office; think the treasurer was present.

Joseph B. Walker testified as follows: Have seen the bonds; received them from William A. Richardson, to collect; tried to do so; has no doubt he made request of the road for payment; made several attempts to collect the bonds; once in August, 1852, once in March, 1852. Called on Gilmore, March 25, 1852, and August, 1852; don't recollect as I ever called on Holbrook; think it probable I did; don't recollect when I called; have no

doubt he knew what bonds I had. I had two interviews with Gilmore about the bonds; he paid me some interest.

The court instructed the jury, upon this branch of the case, that the plaintiff, in order to sustain this suit, must show, in the words of the statute, " a legal demand upon the corporation for the payment of the debt," sixty days before the commencement of the suit, and the question, what is a legal demand, was a question of law; and instructed the jury that a demand upon the treasurer of the corporation, in his office, would be a legal demand; that the treasurer held the moneys, and was the paying officer of the company, and was the proper officer to apply to for the payment of a debt; that the claim should be exhibited to him. It might not be necessary to read it to him, but it must be presented in such a way that he should know what it was. There must be a request of immediate payment. No particular form of words was necessary, and it need not be in writing, but the treasurer must be enabled to understand that the creditor wanted the debt paid then; that if the creditor merely asked the treasurer when he could pay it, and he should fix some future time, or say he could not pay it then, but would in a short time, and the creditor should make no objection, but consent to the delay, it would not be such a demand as the statute required; that the proper place to make the demand was the place of business of the treasurer, that is, his office. If made in the street, and the treasurer should absolutely refuse to pay, that might be sufficient; but if made in the street, and he should not refuse to pay, but merely neglect to pay, that would not be sufficient; that a demand upon a single director would not be sufficient, although, if made upon him in the treasurer's office, in his presence, in such a way that the treasurer understood what was wanted, that might be sufficient; that perhaps a demand, made upon the directors, at a meeting of the board, might be sufficient, and there might possibly be

Harvey *v.* Chase.

other ways to make a demand, but the evidence did not require any particular instructions in that respect; that unless the evidence satisfied them that such a demand of payment of the bond in suit had been made as was necessary, according to the principles laid down by the court, the defendant was entitled to the verdict  The jury found a verdict for the defendant, and the plaintiff excepted to the foregoing instructions of the court to the jury.

*W. H. Bartlett, W. E. Chandler,* and *W. L. Foster,* for the plaintiff.

*Morrison & Stanley,* for the defendant.

FOWLER, J.* By the third section of the 146th chapter of the Revised Statutes, it is provided, in substance, that no suit shall be commenced and maintained against the stockholders of a corporation, whose object is a dividend of profits among its stockholders, to recover of them any debt or civil liability of such corporation, until sixty days " after a legal demand of payment thereof shall have been made upon the company;" (Comp. Laws 313, sec. 4;) and the case transferred from the Common Pleas raises the question, what constitutes a " legal demand of payment" of the debt or civil liability of such corporation—when, where, how, and by and upon whom is it to be made?

It is apparent, from the remaining provisions of the same section of the statute, that such demand has a twofold object.  This is, first, to give the company the privilege of paying and satisfying the debt or liability at once, through the officer or agent on whom the demand is made; and, secondly, but we think principally and chiefly, in default of such immediate payment, to give notice, and thus afford to the officers of the company, and its stockholders in their corporate capacity, an opportunity, dur-

* PERLEY, C. J., having been of counsel, did not sit.

ing the ensuing sixty days, to avoid any suit against the stockholders in their individual capacity, by exhibiting to the demanding creditor unencumbered personal property of the company sufficient to satisfy the debt or liability, and costs, or by paying the same with funds raised by assessments on the stockholders, or otherwise, in the course of that period. Comp. Laws 314.

The statute manifestly pre-supposes that if there exist at the time of the demand sufficient cash funds of the corporation, the debt or liability will be promptly adjusted, and paid upon demand made. This pre-supposition evidently contemplates and requires that the "legal demand" should be a request for the immediate payment of a debt or liability, fully due and payable, made personally by the creditor or his authorized agent, holding and exhibiting, or stating verbally and specifically, the character and amount of such debt or liability, upon some officer or agent of the corporation, shown by evidence or by law or usage entitled, and so presumed to hold its funds for the purpose of adjusting and paying, and whose duty it is, according to law or the by-laws and course of business of the corporation, to liquidate and pay such debt or liability, at his office or other usual place of business, during business hours of the day of the demand. But the statute also contemplates the possibility that the corporation may not be provided with funds to meet the payment at once, so that it would seem to be sufficient if a like demand were made upon some officer or agent of the corporation, whose duty it is to see that the debts of the corporation are duly paid, and that means are seasonably provided and applied to that purpose, or that a meeting of the stockholders is called to provide such means. Comp. Laws 314; *Haynes* v. *Brown*, 36 N. H. 545; *Phelps* v. *Gilchrist*, 28 N. H. (8 Fost.) 266.

From this statement of the requisites of a "legal demand of payment," it follows, we think, that the nature

Harvey *v.* Chase.

or origin of the debt or liability against a corporation, may frequently determine upon what officer or agent the demand would more naturally and generally be made. If, as we understand the fact to be in most of the railroad corporations of this State, it be the duty of the superintendent of a railroad to direct and control its entire business proceedings, and to adjust and pay all debts contracted in the ordinary course of its operations; if he be not only the chief executive officer of the corporation, but its financial agent for liquidating all the ordinary liabilities incident to the management of its railway; if he employ and pay most of the officers, and all the subordinate employees and operatives; if he receive all the collections for the transportation of passengers, freight, mails and expresses, and, after satisfying the current liabilities connected therewith, is required to pass over to the treasurer only the balances of the receipts above the expenditures, monthly, or more or less frequently—a legal demand for the payment of any other debt or liability, arising from the business operations of the road under his management, would most naturally and properly be made upon such superintendent. On the other hand, if the debt or liability were a funded debt or permanent loan of the corporation, or one incident to the original construction of its road, and to be paid from its capital stock, or the proceeds of permanent loans obtained to aid in such construction, or to provide for the payment of preëxisting debts, such demand might well be made upon the treasurer, because, as the general financial agent of the corporation, he might be presumed to have in his custody the funds wherewith to satisfy such a debt or liability; and if he had not, as the financial agent of the corporation, appointed by and responsible to the directors, he would be bound to report to the board the fact of such demand, and the deficiency of funds to meet it.

By the charters of all railroad corporations in this State, the entire management and control of the prudential and financial affairs of the companies is vested in the board of directors for the time being. It is their duty, having this management and control, to provide funds for the payment of all the corporate debts, and, in the absence of such funds, to expose the property of the corporation to satisfy them. If there be neither funds nor property, they are required, under a severe penalty, forthwith to call a meeting of the stockholders to provide means for the payment of those debts. Revised Statutes, ch. 146, sec. 3 ; Comp. Laws 314. The superintendent, like the treasurer, is appointed by and directly amenable to the board of directors ; he is their servant, removable by them at pleasure, and constantly in the habit of intimate association and intercourse with them, besides being the principal executive and administrative officer of the corporation. There can be no doubt, we think, that a proper legal demand for the payment of a corporate debt might be made, either upon the board of directors, or any member thereof, or upon their agent and servant, the superintendent, in any case. It would be the duty of the directors, and of each of them, upon such demand being made, to see that measures were at once taken to provide means of payment, if they did not already exist ; and the superintendent would be bound to provide such means forthwith, or make immediate report to the directors of the fact of the demand, and the want of available funds of the corporation to meet it. There are undoubtedly other officers and agents of a railroad corporation, upon whom a "legal demand" might rightfully be made.

The present suit was brought to recover the amount of a bond of the Contoocook Valley Railroad, issued by that corporation in 1849, in consideration of "moneys lent and advanced to said company for the construction of the railroad authorized by their act of incorporation," payable

July 1, 1851, with semi-annual interest payable at the treasurer's office on the first days of January and July, in each year. *Pierce* v. *Chesley*, 32 N. H. 393. It was, therefore, upon its face, part and parcel of a permanent loan of the corporation, to be repaid from the capital stock of the company, or from the proceeds of a new loan raised for the purpose of paying it. Payment of this bond might, therefore, have been properly and legally demanded of the treasurer. But it might with equal propriety have been demanded of the board of directors, or any member thereof, or of their immediate servant and agent, the superintendent, the chief executive and administrative officer of the corporation; for it would have been the duty of each and all of those officers, upon such demand being made, to have taken measures, in the absence of funds in their possession or under their control for the emergency, to provide means to liquidate the debt, or at least to have communicated to the proper officers of the corporation notice of the fact, so that a meeting of the stockholders to provide such means might forthwith have been called. The superintendent, or any member of the board of directors, was under as strong obligations to do this, and quite as likely, under ordinary circumstances, to discharge the duty, as the treasurer of the corporation. We can, then, see no sufficient reason why a "legal demand" for the payment of the bond in suit might not as well and as properly have been made upon either the superintendent or any one of the directors, as upon the treasurer, so far as concerns the notice to the corporation contemplated by the statute, and the consequent right of the plaintiff to maintain an action against the stockholders in their individual capacity.

As the instructions of the court below proceeded upon the erroneous view of the law, that a "legal demand" for payment of the plaintiff's debt could have been made upon the treasurer alone, expressly denying that it could

have been made upon any single member of the board of directors, and, by implication at least, that it could have been made upon the superintendent, the verdict for the defendant, rendered under those instructions, must be set aside, and a new trial granted.

*Verdict set aside.*